18-2975-cr
*United States v. Montague*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

———

AUGUST TERM 2022
No. 18-2975-cr

UNITED STATES OF AMERICA,
*Appellee*,

v.

COLIN MONTAGUE,
*Defendant-Appellant*,

CHARLTON OSBORNE, ANTOINE SHANNON, COLLIN THOMAS,
CLIVE HAMILTON, ALYSSA SPRAGUE, JARA JENKINS CARMICHAEL,
RACHEL VAIL, DAVID CAESAR, SHELDON PALMER, JERMAINE SWABY,
MICHAEL MOSGROVE, LOU PERRY SLAUGHTER, AKIL LAZARUS,
CLUETH BURTON, MONTAGUE ENTERPRISES, INC.,
*Defendants*.[*]

———

On Appeal from the United States District Court
for the Western District of New York

———

ARGUED: SEPTEMBER 29, 2022
DECIDED: MAY 9, 2023

———

[*] The Clerk of Court is directed to amend the caption as set forth above.

Before: JACOBS, BIANCO, and MENASHI, *Circuit Judges*.

Defendant-Appellant Colin Montague appeals from a jury verdict finding him guilty of nine narcotics and money-laundering offenses, including operating a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848. Montague challenges his conviction primarily on two grounds. First, he argues that his indictment insufficiently stated the CCE count because it did not identify the conduct constituting the "continuing series of violations" that 21 U.S.C. § 848(c)(2) requires. Second, Montague argues that the district court improperly instructed the jury when it construed § 848(b)(2)(A) to allow aggregation of drug amounts across the continuing series of violations rather than requiring that a single narcotics offense "involve" at least 150 kilograms of cocaine. We hold that the indictment was sufficient under our previous decision in *United States v. Flaharty*, 295 F.3d 182 (2d Cir. 2002). We also hold that the district court plainly erred when it instructed the jury but that the error did not affect Montague's substantial rights. We affirm the jury verdict on all counts.

Judge Bianco concurs in a separate opinion. Judge Jacobs concurs in part and dissents in part in a separate opinion.

———————

ROBERT MARANGOLA, Assistant United States Attorney (Tiffany H. Lee, Assistant United States Attorney, *on the brief*), *for* James P. Kennedy, Jr., United States Attorney for the Western District of New York, *for Appellee.*

MICHAEL JOSEPH WITMER, Law Office of Michael Joseph Witmer, Rochester, NY, *for Defendant-Appellant.*

---

MENASHI, *Circuit Judge*:

Defendant-Appellant Colin Montague appeals a jury verdict finding him guilty of engaging in a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848, money laundering conspiracy in violation of 18 U.S.C. § 1956(h), and substantive money laundering offenses in violation of 18 U.S.C. § 1957(a).

The CCE statute is "aimed at what Congress perceived to be a peculiar evil: the drug kingpin." *Richardson v. United States*, 526 U.S. 813, 828 (1999) (Kennedy, J., dissenting). Montague argues that he cannot be convicted under the kingpin statute primarily for two reasons. First, Montague says that his indictment was inadequate. The CCE statute requires that the defendant engaged in a "continuing series of violations" of the federal narcotics laws. 21 U.S.C. § 848(c)(2). Along with most of our sister circuits, we have interpreted this provision to require three predicate violations, each of which is an element of a CCE offense. *See, e.g.*, *Monsanto v. United States*, 348 F.3d 345, 348 (2d Cir. 2003). Montague argues that his indictment did not identify the three predicate violations and therefore failed to charge a CCE.

Second, Montague contends that the district court improperly interpreted 21 U.S.C. § 848(b)(2)(A) when it instructed the jury. That subsection provides that a minimum sentence of life in prison must be imposed if "the violation referred to in subsection (c)(1) involved at least 300 times the quantity of a substance described in subsection 841(b)(1)(B) of this title." 21 U.S.C. § 848(b)(2)(A). The district court

3

instructed the jury that it could aggregate the drug amounts involved across the three predicate violations in order to reach the threshold quantity. Montague argues this instruction was erroneous because § 848(b)(2)(A) refers to a single violation.

We are not persuaded by Montague's challenge to his indictment because the indictment satisfies the test we announced in *United States v. Flaharty*, 295 F.3d 182 (2d Cir. 2002). In fact, the indictment here is not meaningfully different from the one we considered in *Flaharty*. We agree, however, with Montague's interpretation of § 848(b)(2)(A). That provision requires the threshold drug amount to be "involved" in a single felony violation of the drug laws. The district court's interpretation, which permitted aggregation, was erroneous. Nevertheless, we conclude that the error was harmless in light of the overwhelming evidence introduced against Montague. As a result, we affirm Montague's conviction on all counts.

## BACKGROUND

### I

Montague began investing in real estate in the Rochester area around 2006. According to Montague, his real-estate business was legitimate: After purchasing properties, he would rent them out and use the profits to buy new properties.

But in 2012, the authorities in Greece, New York—the municipality in which Montague resides—opened an investigation on the suspicion that he was engaged in drug trafficking. According to the government, Montague was the head of a vast drug ring that purchased cocaine as far away as the West Coast, transported it to the Rochester area, sold it to lower-level drug dealers, and laundered the

4

profits through Montague's real-estate business. In May 2013, the results of the investigation were presented to a state grand jury, which declined to indict Montague.

The investigation into Montague continued, however. In January 2014, officers affiliated with the Greater Rochester Area Narcotics Enforcement Team ("GRANET"), which includes federal as well as state and local law-enforcement agencies, secured warrants to wiretap the telephones of Montague and his associates. On June 26, 2014, GRANET officers executed a search warrant at Montague's home and seized drug ledgers and other materials. Montague was not present during the search and no drugs were found. In August 2014, a federal grand jury indicted Montague. The grand jury returned a superseding indictment about a month later. On December 9, 2014, the grand jury filed a second superseding indictment (hereinafter "the indictment"). On December 11, 2014, U.S. marshals arrested Montague in Atlanta, Georgia.

## II

The indictment charged Montague with nine counts: One count of engaging in a CCE in violation of 21 U.S.C. § 848; one count of narcotics conspiracy in violation of 21 U.S.C. § 846; one count of money laundering conspiracy in violation of 18 U.S.C. § 1956(h); and six counts of substantive money laundering offenses in violation of 18 U.S.C. § 1957(a). The CCE count of the indictment stated in relevant part that Montague "did knowingly, willfully, intentionally and unlawfully engage in a Continuing Criminal Enterprise in that he did violate Title 21, United States Code, Sections 841(a)(1) and 846, which violations were part of a continuing series of violations of said statutes." App'x 32. Apart from Count Two—the charge for narcotics

conspiracy in violation of 21 U.S.C. § 846—the indictment contained no details about Montague's alleged violations of §§ 841(a)(1) and 846. Before trial, Montague moved to dismiss the indictment as inadequate. That motion was denied.

Montague's trial lasted seven weeks. The jury heard from dozens of witnesses and listened to scores of telephone calls collected from wiretaps. The government submitted thirty-four pages of a drug ledger. Those pages reflect about six months of the enterprise, which according to the government ran for eighty-four months.

After closing arguments, Montague submitted a jury charge request. In relevant part, he asked the district court to "utilize the standard jury instructions as set forth in the Hon. Leonard Sand's Modern Federal Jury Instructions Criminal except as modified herein." App'x 5553. The modifications Montague requested are not related to his arguments on appeal.

When instructing the jury, the district court stated that the jury could not find Montague guilty of engaging in a CCE (Count One) if it did not first find him guilty of narcotics conspiracy (Count Two). The court continued:

> [T]he Government must prove beyond a reasonable doubt … that this offense was part of a continuing series of violations of the federal narcotics laws. A continuing series of violations is three or more violations of the federal narcotics laws committed over a definitive period of time. These three or more violations do not have to be convictions or separate counts in the indictment. They may even be acts not mentioned in the indictment at all. As long as the defendant, Colin Montague, had the intent

6

to violate the narcotics laws when he committed these acts, you must … unanimously agree on which three acts constitute the continuing series of violations.

App'x 5680-81. When explaining the verdict sheet to the jury, the district court noted that, should the jury find Montague guilty of engaging in a CCE, it must determine "whether the continuing series of violations undertaken involved 150 kilograms or more of cocaine." App'x 5720.

The jury found Montague guilty on all nine counts. In particular, the jury decided it was "[p]roven" that Montague's "continuing series of violations of 21, U.S.C., Section 841(a)(1) and 846 … involved at least 150 kilograms of cocaine." App'x 5748, 5766.

At sentencing in June 2018, Montague moved to dismiss his narcotics conspiracy conviction (Count Two) on the ground that it was a lesser included offense of engaging in a CCE. The government did not oppose the motion, so the district court dismissed Montague's conviction for narcotics conspiracy. Because the jury found as proven the facts needed to be convicted under § 848(b), the district court sentenced Montague to life in prison for his CCE charge. It also sentenced him to 240 months imprisonment for conspiracy to commit money laundering and 120 months imprisonment for the substantive money-laundering charges, all to run concurrently with his life sentence. Montague now appeals the verdict, arguing principally that he cannot be convicted of engaging in a CCE because the indictment was inadequate and that the district court incorrectly interpreted 21 U.S.C. § 848(b)(2)(A) when it permitted the jury to aggregate drug amounts across the continuing series of violations in order to reach the 150-kilogram threshold.

**STANDARD OF REVIEW**

Review of a district court's denial of a motion to dismiss an indictment "entails mixed questions of law and fact." *United States v. Fernandez-Antonia*, 278 F.3d 150, 156 (2d Cir. 2002). "[M]ixed questions of law and fact are … reviewed *de novo*." *FDIC v. Providence Coll.*, 115 F.3d 136, 140 (2d Cir. 1997); *see also United States v. Daley*, 702 F.3d 96, 99-100 (2d Cir. 2012) ("The question whether the district court properly denied [the] motion to dismiss the indictment is a mixed question of fact and law, subject to *de novo* review.").

Typically, "[t]his court reviews a district court's statutory interpretation *de novo*." *United States v. Kozeny*, 541 F.3d 166, 171 (2d Cir. 2008) (citing *United States v. Rood*, 281 F.3d 353, 355 (2d Cir. 2002)). However, Montague did not object to the district court's interpretation of § 848(b)(2)(A) when it instructed the jury. When a party "failed to raise th[e] statutory challenge below," we "review the district court's interpretation … for plain error." *United States v. Rosario*, 7 F.4th 65, 69 (2d Cir. 2021).

"The defendant has 'the burden of establishing entitlement to relief for plain error.'" *Greer v. United States*, 141 S. Ct. 2090, 2097 (2021) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004)). The Supreme Court has identified four prongs of plain error analysis: (1) there must be an error; (2) the error must be plain, meaning it must be "clear or obvious, rather than subject to reasonable dispute"; (3) the error must have "affected the appellant's substantial rights" in that it affected the outcome of the proceedings; and (4) if these other "three prongs are satisfied, the court of appeals has the discretion to remedy the error … if the error seriously affects the fairness, integrity or public reputation of judicial proceedings."

*Puckett v. United States*, 556 U.S. 129, 135 (2009) (internal quotation marks, alteration, and emphasis omitted); *see also* Fed. R. Crim. P. 52(b).

## DISCUSSION

Congress has mandated a minimum sentence of twenty years for anyone convicted of engaging in a "continuing criminal enterprise." 21 U.S.C. § 848(a). A continuing criminal enterprise consists of five elements. *See generally United States v. Aiello*, 864 F.2d 257, 263-64 (2d Cir. 1988). First, the defendant must commit a felony violation of 21 U.S.C. Chapter 13. 21 U.S.C. § 848(c)(1). Second, that felony must be a "part of a continuing series of violations" of 21 U.S.C. Chapter 13. *Id.* § 848(c)(2). Third, those violations must be undertaken with five or more persons. *Id.* § 848(c)(2)(A). Fourth, the defendant must act in a "position of management" with respect to those five persons. *Id.* Fifth, the defendant must "obtain[] substantial income or resources" from the continuing series of violations. *Id.* § 848(c)(2)(B). Montague's challenge to the indictment centers on the second element. *See infra* Part I.

A life sentence is required if the government proves that the defendant acted not simply in a position of management but as "the principal administrator, organizer, or leader of the enterprise" or one of such leaders. 21 U.S.C. § 848(b)(1). As applicable to Montague's case, the government must also prove that "the violation referred to in subsection (c)(1) involved at least 300 times the quantity of a substance described in subsection 841(b)(1)(B)." *Id.* § 848(b)(2)(A). The parties do not dispute that 150 kilograms of cocaine is the correct amount needed to satisfy this provision. Montague's challenge to the

9

jury instructions concerns which violations may be considered in arriving at the 150-kilogram threshold. *See infra* Part II.

**I**

Montague contends that the district court erred by failing to dismiss his indictment, which he argues did not adequately charge him with engaging in a CCE. Montague's argument proceeds in four steps. First, as stated above, the second element of a CCE offense requires that there be a "continuing series of violations" of the narcotics laws. 21 U.S.C. § 848(c)(2). We have held that the phrase "continuing series of violations" means three violations. *United States v. Losada*, 674 F.2d 167, 174 (2d Cir. 1982); *United States v. Young*, 745 F.2d 733, 747 (2d Cir. 1984); *Aiello*, 864 F.2d at 264; *Monsanto*, 348 F.3d at 348.

Second, the Supreme Court has explained that each violation composing the continuing series "amounts to a separate element" of the CCE offense, so a jury must "agree unanimously about which specific violations make up the 'continuing series of violations.'" *Richardson*, 526 U.S. at 815, 819.

Third, because each of the three violations composing the continuing series of violations is an element of the CCE offense, each element must appear in the indictment. *See Hamling v. United States*, 418 U.S. 87, 117 (1974) ("[A]n indictment is sufficient if it … contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend.").

Fourth, Montague argues that the indictment here failed to describe three violations constituting a continuing series of violations. He acknowledges that Count Two—which charged narcotics

10

conspiracy in violation of 21 U.S.C. § 846—sufficiently alleges one violation. But he says that the indictment does not sufficiently describe two other violations. Count One—which charged the CCE offense—stated only that Montague "engage[d] in a Continuing Criminal Enterprise in that he did violate … Sections 841(a)(1) and 846, which violations were part of a continuing series of violations of said statutes undertaken by the defendant." App'x 32. Citing *United States v. Bansal*, 663 F.3d 634 (3d Cir. 2011), Montague claims that this recitation of statutory provisions did not put him on notice of the conduct alleged to have constituted the other two violations. On these grounds, Montague contends that three violations do not appear in his indictment and it was accordingly defective.

It is undisputed that the violations composing a continuing series are elements of the CCE offense and must appear in the indictment. The question is the level of detail with which the violations must appear. Montague essentially urges us to adopt a facts-and-circumstances test. That is, he claims that an adequate CCE charge must include sufficient factual detail to put the defendant on notice of precisely which three acts the government will seek to prove at trial that constitute the continuing series of violations.

We confronted this very question in *United States v. Flaharty*, 295 F.3d 182 (2d Cir. 2002), and declined to adopt a facts-and-circumstances test. We said in that case:

> Count three of the superseding indictment in the present case … referred only to "felony violations of … Sections 848(a)(1) and 846," and counts one and two simply charged § 846 conspiracies to violate §§ 848(a)(1) and 860; but we cannot conclude that the superseding

11

indictment thereby failed to allege an offense. In order to state an offense, "[a]n indictment need only track the language of the statute and, if necessary to apprise the defendant 'of the nature of the accusation against him,' … state time and place in approximate terms." Count three here closely tracked the language of § 848(c), and it alleged that the continuing series of felonies were violations of §§ 841(a)(1) and 846, and that the enterprise was conducted "[i]n or about and between 1992 and April 1998 … within the Eastern District of New York and elsewhere." We thus conclude that count three did not fail to charge an offense.

*Flaharty*, 295 F.3d at 198 (citations omitted).

The *Flaharty* test has two requirements. First, the indictment must track the language of the statute. Second, and only if necessary, the indictment must state the approximate time and place of the offense. Nowhere in *Flaharty* did we say that the violations composing the continuing series must be alleged in separate counts or that the facts and circumstances amounting to a violation must be mentioned elsewhere in the indictment. On the contrary, we held that an indictment referring "only to 'felony violations of … Sections 841(a)(1) and 846'" sufficiently tracks the language of § 848(c) and does not "fail to charge" a CCE offense. *Id.*

Montague's indictment clearly passes this test. Count One of the indictment "closely tracked the language of § 848(c)," it "alleged that the continuing series of felonies were violations of §§ 841(a)(1) and 846," and it stated the time frame and location at which the

12

enterprise was conducted. *Id.* Thus, it sufficiently alleged the violations that compose the continuing series of violations.

The indictment in this case is not meaningfully different from the one we considered in *Flaharty*. The defendant in *Flaharty* was charged with three relevant counts: one count of engaging in a CCE and two counts of narcotics conspiracy in violation of § 846. *Flaharty*, 295 F.3d at 198. Montague was charged with two relevant counts: one count of engaging in a CCE and one count of narcotics conspiracy in violation of § 846. The only notable difference between the two indictments is that Montague was charged with one fewer count of narcotics conspiracy. But the *Flaharty* opinion did not say that the extra narcotics conspiracy count was at all relevant in evaluating whether the indictment "track[s] the language of the statute." *Id.* And it could not have made such an argument: *Three* violations are needed to constitute a "continuing series" of violations under § 848(c)(2). *See Aiello*, 864 F.2d at 264. The *Flaharty* indictment described only two.[1]

---

[1] The dissent claims that "there was indeed a series of three offenses alleged in *Flaharty*." *Post* at 7 n.4. The dissent arrives at the number three by counting the two narcotics conspiracy counts as well as "a felony drug violation in the CCE count." *Id.* But that is mistaken; there was no felony drug violation mentioned in the CCE count in the *Flaharty* indictment. The CCE count considered in *Flaharty* read as follows:

> [T]he defendants … did knowingly and intentionally engage in a continuing criminal enterprise, in that they committed felony violations of Title 21, United States Code, Sections 841(a)(1) and 846, which violations were part of a continuing series of violations of those statutes undertaken by the above-referenced defendants in concert with five or more persons with respect to whom the above-referenced defendants occupied positions of organizer, supervisor and manager, and

Under a facts-and-circumstances test, an indictment that includes facts and circumstances for only one or two violations would be defective. But *Flaharty* pointedly did not hold that the indictment was defective for failing to allege facts and circumstances that would amount to three violations. Instead, we held that the *Flaharty* indictment adequately charged a CCE offense, and there is no meaningful distinction between the *Flaharty* indictment and the indictment before us now.

At oral argument, Montague suggested that this understanding of *Flaharty* conflicts with our opinion in *United States v. Joyner*, which considered an indictment in which there was "nothing … identifying which three violations served as the predicate for the CCE charge." 313 F.3d 40, 48 (2d Cir. 2002). However, *Flaharty* and *Joyner* are distinguishable. In *Joyner*, we characterized the indictment as saying "nothing" about the predicate violations, while in *Flaharty* we noted that the indictment specified that the underlying violations were violations of §§ 841(a)(1) and 846.[2] These two cases stand for the

---

> from which continuing series of violations the above-referenced defendants obtained substantial income and resources.

Superseding Indictment at 3, *United States v. Johnson*, No. 1:98-CR-420 (E.D.N.Y. Mar. 8, 1999), ECF No. 73. This language does not describe the facts and circumstances of a predicate felony drug violation—unless the dissent believes that the reference to "felony violations" of 21 U.S.C. §§ 841(a)(1) and 846 is sufficient to describe such a violation. If so, then the language of the indictment in this case must also be sufficient.

[2] Rather than examining our opinions in *Joyner* and *Flaharty*, the dissent looks behind those decisions to the underlying indictments. *See post* at 5. But our opinions in those cases control our decision here. "It is usually a judicial decision's reasoning—its *ratio decidendi*—that allows it to have life

14

proposition that when a CCE count says nothing about the three underlying violations it is defective (*Joyner*), but when it alleges predicate violations by reference to the violated statutory provisions it sufficiently charges a CCE offense (*Flaharty*). The indictment before us is not legally distinguishable from the *Flaharty* indictment, and we conclude it sufficiently charges the CCE offense.[3]

---

and effect in the disposition of future cases." *Ramos v. Louisiana*, 140 S. Ct. 1390, 1404 (2020). We examine the reasoning that our prior "opinions turned on"; we do not apply prior judgments "stripped from any reasoning" articulated in those cases. *Id.* Our reasoning in *Joyner* was compatible with our reasoning in *Flaharty*: When the indictment says "nothing" about the predicate violations, the indictment is insufficient; when the indictment specifies the underlying violations by reference to statutory sections, the indictment is sufficient. The dissent suggests that we should sidestep the reasoning articulated in our prior opinions because the underlying indictments in *Joyner* and *Flaharty* were not meaningfully different. *See post* at 8-9 ("[T]he indictment in *Joyner did* discuss predicate offenses—and did so in the same way as the *Flaharty* and *Montague* indictments."). That may be. But we cannot relitigate *Joyner* and *Flaharty* here. We must accept the reasoning of those cases to decide the one before us.

[3] The dissent claims that our decision creates a circuit split with the Third Circuit's decision in *Bansal*. *Post* at 11. Our decision, however, rests on a straightforward application of *Flaharty*. If there is a split between our circuits, it emerged when the Third Circuit adopted a facts-and-circumstances test in *Bansal* after our court declined to adopt one in *Flaharty*. The dissent also claims that our understanding of *Flaharty* creates "serious tension" with cases from the First, Seventh, Eighth, and Tenth Circuits. *Id*. That is incorrect. Those cases each described a sufficient condition for an indictment charging a CCE offense to be adequate: When another count (or counts) in the indictment describes three violations of the narcotics laws, the count charging a CCE offense is sufficient. *See United States v. Soto-Beniquez*, 356 F.3d 1, 26 (1st Cir. 2003) (holding that, "at least where the CCE

15

An alternative pleading rule would not necessarily provide more information to the defendant. Courts that have adopted facts-and-circumstances tests acknowledge that separate counts of narcotics violations satisfy that test. *See, e.g.*, *Bansal*, 663 F.3d at 647-48. When all three predicate violations are narcotics conspiracies and are charged as separate counts in the indictment, not much additional information will be provided. An indictment charging narcotics conspiracy need only allege "the existence of a narcotics conspiracy, a relevant time frame, and the statute alleged to be violated." *United States v. Macklin*, 927 F.2d 1272, 1276 (2d Cir. 1991). Such allegations are similarly subject to the criticism that a defendant might need more notice of the charges. The proper way to address such concerns is through a bill of particulars. "An indictment that fulfills the requirements of Federal Rule of Criminal Procedure 7(c)(1) but is nonetheless insufficient to permit the preparation of an adequate defense may be supplemented with a bill of particulars." *United States v. Rigas*, 490 F.3d 208, 237 (2d Cir. 2007) (internal quotation marks

count incorporates by reference predicate offenses charged elsewhere in the indictment," the indictment sufficiently charges a CCE offense despite its failure to identify the predicate offenses in the CCE count); *United States v. Moya-Gomez*, 860 F.2d 706, 752 (7th Cir. 1988) (holding that six separate narcotics charges gave "actual notice of the predicate acts" for the CCE charge); *United States v. Becton*, 751 F.2d 250, 256 (8th Cir. 1984) ("[O]ther counts of the indictment gave Becton notice of the underlying felonies."); *United States v. Staggs*, 881 F.2d 1527, 1531 (10th Cir. 1989) (en banc) ("[A] CCE indictment is sufficient where, as here, the CCE counts charge appellants in the language of the statute, and the indictment additionally alleges at least three violations in another count or counts."). We agree that charging separate narcotics counts suffices to allege the predicate acts that constitute the continuing series of violations. But these cases announced a sufficient rather than a necessary condition and therefore do not conflict with our decision today.

omitted). Although a bill of particulars "cannot save an invalid indictment," *Russell v. United States*, 369 U.S. 749, 770 (1962), "the bill's purpose is to 'advise the defendant of the specific acts of which he is accused,'" *Rigas*, 490 F.3d at 237 (quoting *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)). While Montague sought a bill of particulars and requested information about the violations constituting the continuing series, he did not appeal the district court's denial of that request, so it is not before us.

For the reasons stated, the indictment was sufficient. The district court did not err when it failed to dismiss it.

**II**

Montague also argues that there was insufficient evidence to convict him of engaging in a CCE under 21 U.S.C. § 848(b). He contends that the district court misinterpreted § 848(b)(2)(A) when it instructed the jury. Because Montague did not raise this question of statutory interpretation before the district court, we review it for plain error. *Rosario*, 7 F.4th at 69. Although we agree with Montague that the district court's interpretation was erroneous and that the error was plain, Montague's substantial rights were not affected. The jury was presented with overwhelming evidence such that, had the district court properly instructed the jury, the jury would have returned a guilty verdict. For that reason, we affirm.

**A**

"Any person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 20 years." 21 U.S.C. § 848(a). Subsection (c) defines "continuing criminal enterprise" and identifies the five elements we described

above. *Id.* § 848(c). Importantly, the first element is stated in subsection (c)(1): A person is engaged in a continuing criminal enterprise only if he "violates any provision of this subchapter or subchapter II the punishment for which is a felony." 21 U.S.C. § 848(c)(1). Subsection (c)(2) then explains that the felony violation described in subsection (c)(1) must be "a part of a continuing series of violations" of the narcotics laws. *Id.* § 848(c)(2). Subsection (c)(2) does not require that the other violations in the series be felonies. *Id.*

Subsection (b) of § 848 provides for mandatory life imprisonment for engaging in a CCE under certain circumstances. *Id.* § 848(b); *see United States v. Torres*, 901 F.2d 205, 246 (2d Cir. 1990). To obtain a conviction under § 848(b), the government must prove two additional elements. First, it must show that the defendant was "the principal administrator, organizer, or leader of the enterprise or is one of several such principal administrators, organizers, or leaders." 21 U.S.C. § 848(b)(1). Second, the government must show either that "the violation referred to in subsection (c)(1) involved at least 300 times the quantity of a substance described in subsection 841(b)(1)(B) of this title," *id.* § 848(b)(2)(A), or that "the enterprise … received $10 million dollars in gross receipts during any twelve-month period of its existence," *id.* § 848(b)(2)(B). The jury was not instructed on this last possibility—that Montague's enterprise received $10 million dollars in gross receipts during a twelve-month period. Consequently, he was properly convicted under § 848(b) only if "the violation referred to in subsection (c)(1) involved at least 300 times the quantity of a substance described in subsection 841(b)(1)(B)." *Id.* § 848(b)(2)(A). Neither party disputes that 150 kilograms of cocaine is the quantity needed to satisfy that requirement.

18

After instructing the jury on the five elements of the CCE offense listed in subsection (c)—which Montague does not challenge—the court addressed the requirements of subsection (b). It stated: "[I]n the event you determine the defendant, Colin Montague, to be guilty of engaging in a criminally continuing criminal enterprise as charged in Count 1, you must determine … whether the *continuing series of violations* undertaken involved 150 kilograms or more of cocaine." App'x 5719-20 (emphasis added). The verdict sheet described this requirement as follows: "We the jury find the allegation that the *continuing series of violations* of 21 USC §§ 841(a)(1) and 846 undertaken by the Defendant Colin Montague involved at least 150 kilograms of cocaine." App'x 5766 (emphasis added). The foreman marked this element as "Proven." *Id.*

Montague contends that the plain language of § 848(b)(2)(A) requires that the 150 kilograms of cocaine must be "involved" in "the violation referred to in subsection (c)(1)." 21 U.S.C. § 848(b)(2)(A). That is, 150 kilograms of cocaine must be involved in the single felony violation described in subsection (c)(1), rather than involved in the "continuing series of violations" of the narcotics laws described in subsection (c)(2). The district court erred, he says, because it instructed the jury that it must determine "whether the continuing series of violations undertaken involved 150 kilograms or more of cocaine." App'x 5720.

**B**

We agree that the district court's interpretation of § 848(b)(2)(A) was erroneous. "In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself." *Food Mktg. Inst. v.*

19

*Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019). According to the government, § 848(b)(2)(A) permits the aggregation of smaller drug quantities across the three violations composing the continuing series of violations. This is the interpretation the district court adopted when it instructed the jury. Montague argues that this interpretation is erroneous because the statute requires that the *single* felony violation, which is a part of the continuing series of violations, involve the required drug quantity.

We agree with Montague that the government's interpretation is erroneous because it conflicts with the text. Subsection (b)(2)(A) refers to "the violation" in the singular. 21 U.S.C. § 848(b)(2)(A). But the government's interpretation maintains that drug amounts may be aggregated across multiple violations. *See Aiello*, 864 F.2d at 264 (noting that three violations are needed for a continuing series of violations).

Moreover, the text of subsection (b)(2)(A) explicitly refers to this single violation as the "violation referred to in subsection (c)(1)." 21 U.S.C. § 848(b)(2)(A). Subsection (c)(1), in turn, describes the first element of the CCE offense: that the defendant "violates any provision of this subchapter or subchapter II the punishment of which is a felony." *Id.* § 848(c)(1). In other words, subsection (c)(1) refers to the single predicate felony violation, not the entire series of violations. The government's erroneous interpretation, however, would allow drug amounts involved in other violations to be aggregated, even though these violations need not be felonies. *See id.* § 848(c)(2) (stating that the violations constituting the continuing series need only be "violations of this subchapter or subchapter II"). The government's interpretation errs by incorporating the concept of a "continuing series of violations," which is not found in subsection (c)(1). Rather,

20

that concept appears in subsection (c)(2), which is not referenced at all in subsection (b)(2)(A).

Montague's proposed interpretation avoids these problems. Under his interpretation, 150 kilograms of cocaine must be involved in a single violation of subchapter I or subchapter II and that violation must be a felony. It does not allow for multiple violations when the statutory text uses the singular, and it relies on the mandate of subsection (c)(1) that the violation be a felony.

Had Congress wanted to authorize aggregation, it easily could have done so. The subsections immediately before and after subsection (b)(2)(A) both describe elements that depend on "the enterprise." 21 U.S.C. §§ 848(b)(1), 848(b)(2)(B). Congress could have written that the drug quantity applies to "the continuing series of violations referred to in subsection (c)(2)." But it did not. Congress provided that the quantity applies to "the violation referred to in subsection (c)(1)." When an examination of the ordinary meaning and structure of the law "yields a clear answer, judges must stop." *Food Mktg. Inst.*, 139 S. Ct. at 2364. We have a clear answer here.

The government does not have a response to this argument. It simply invokes *United States v. Atencio*, 435 F.3d 1222 (10th Cir. 2006), in which the Tenth Circuit also considered § 848(b)(2)(A). The government's reliance on *Atencio* is misplaced. *Atencio* did not conclude that the interpretation the government advances here was correct. The Tenth Circuit said that this interpretation, which allows for aggregation across the three violations constituting the continuing series, "may well be erroneous." *Id.* at 1230. In fact, the *Atencio* court indicated that Montague's interpretation is the correct one. The court observed that "§ 848(b)(2)(A) requires that '*the violation referred to in*

*subsection (c)(1)* of this section involved' at least … 150 kilograms of cocaine" and that "[s]ubsection (c)(1) describes a single, specific violation … on which the jury must unanimously agree." *Id*. Because neither party in *Atencio* proposed Montague's interpretation, the Tenth Circuit merely "acknowledge[d] some doubt as to the correctness of the jury instructions" in that case, *id.*, and resolved the issue on the ground that any possible error "did not affect the Atencios' substantial rights," *id.* at 1231. *Atencio* thus does not support the government's position that aggregation is permissible under § 848(b)(2)(A).

We hold that a conviction under 21 U.S.C. § 848(b)(2)(A) requires that "300 times the quantity of a substance described in subsection 841(b)(1)(B)" be involved in the violation described in § 848(c)(1): a single violation that is a felony. 21 U.S.C. § 848(b)(2)(A).

## C

For an error to be plain it must be "clear or obvious, rather than subject to reasonable dispute." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (quoting *Puckett*, 556 U.S. at 135). We do not think the interpretation of the statute here is subject to reasonable dispute. Twenty-five years ago, we considered similar jury instructions and concluded that the district court "improperly instructed the jury that it could aggregate several predicate offenses to reach this quantity requirement" under 21 U.S.C. § 848(b)(2)(A). *United States v. Goodwin*,

22

No. 96-1199, 1997 WL 767408, at *4 (2d Cir. Dec. 12, 1997). We adhere to that longstanding judgment.[4]

Whether an error is plain "can depend on well-settled legal *principles* as much as well-settled legal *precedents*." *United States v. Brown*, 352 F.3d 654, 664 (2d Cir. 2003). Thus, "[e]ven absent binding case law … an error can be plain if it violates an absolutely clear legal norm, for example, because of the clarity of a statutory provision." *In re Sealed Case*, 573 F.3d 844, 851 (D.C. Cir. 2009) (internal quotation

---

[4] "Although we decided [*Goodwin*] by nonprecedential summary order, rather than by opinion, our '[d]enying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases.'" *United States v. Payne*, 591 F.3d 46, 58 (2d Cir. 2010) (quoting 2d Cir. Order of June 26, 2007, adopting 2d Cir. Local R. 32.1, at 3). *Goodwin* presented exactly the same statutory interpretation question we consider here. Because "nonprecedential decisions should be used only when the legal issue is clear enough that all reasonable judges will come out the same way," *Swanson v. Bank of Am., N.A.*, 563 F.3d 634, 635 (7th Cir. 2009), the *Goodwin* panel necessarily decided that the question was not subject to reasonable dispute. *See* 2d Cir. Order of June 26, 2007, at 3 ("Summary orders are issued in cases in which a precedential opinion would serve no jurisprudential purpose because the result is dictated by pre-existing precedent."). In other words, the *Goodwin* panel decided that its interpretation of § 848(b)(2)(A) was so "clear or obvious, rather than subject to reasonable dispute," that an opinion addressing the issue would serve no jurisprudential purpose. *Marcus*, 560 U.S. at 262 (quoting *Puckett*, 556 U.S. at 135; *see United States v. Kirilyuk*, 29 F.4th 1128, 1148 (9th Cir. 2022) (Bress, J., dissenting) ("That the disposition was non-precedential confirms that [the] argument was readily resolved based on established law … In our unpublished dispositions, there should be no new legal holdings, just applications of established law to facts.") (internal quotation marks omitted); *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs.*, 873 F.3d 574, 578 (7th Cir. 2017) ("Two other circuits agree and deem this so straightforward that they have issued nonprecedential decisions.").

23

marks omitted). Accordingly, our court has said that an error is plain when it violates "the plain language of the statute." *United States v. Polouizzi*, 564 F.3d 142, 156 (2d Cir. 2009); *see United States v. Whab*, 355 F.3d 155, 158 (2d Cir. 2004) ("[W]e can notice plain error that does not contravene clearly established precedent where such error is … obvious.") (internal quotation marks, alteration, and citation omitted).[5]

In this case, "the government's proffered interpretation of the statute is inconsistent with its plain words." *United States v. Murphy*, 942 F.3d 73, 86 (2d Cir. 2019). The statute requires that "the violation referred to in subsection (c)(1)" must "involve at least" 150 kilograms of cocaine. 21 U.S.C. § 848(b)(2)(A). That provision does not bear the interpretation that the quantity may be aggregated across more than one violation.

The concurrence claims that the error cannot be plain because § 848(b)(2)(A) is part of a "complex statutory regime." *Post* at 6.[6] But

---

[5] *See also Polouizzi*, 564 F.3d at 156 ("Although our Circuit has not previously held, as we now do, that simultaneous possession of multiple matters containing images of child pornography constitutes a single violation of 18 U.S.C. § 2252(a)(4)(B), that conclusion is demanded by the plain language of the statute and is entirely consistent with Supreme Court and Circuit precedent addressing similar statutes. Therefore, the error in this case is plain.").

[6] We note that the Supreme Court has cautioned that "a court cannot wave the ambiguity flag just because it found the regulation impenetrable on first read," given that "hard interpretive conundrums, even relating to complex rules, can often be solved." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019). There is a difference between cases in which "the relevant language, carefully considered, can yield more than one reasonable interpretation," on the one hand, and those in which "discerning the only possible interpretation

24

the legal error in this case does not implicate any complexities. The issue is simple: whether the statute could be referring to several violations when it specifies "the violation referred to in subsection (c)(1)." 21 U.S.C. § 848(b)(2)(A). Because the word "violation" is singular—and because subsection (c)(1) also describes a single violation—the answer is not complicated. It is "clear or obvious, rather than subject to reasonable dispute." *Marcus*, 560 U.S. at 262 (quoting *Puckett*, 556 U.S. at 135).[7] For that reason, the district court

---

requires a taxing inquiry," on the other. *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 707 (1991) (Scalia, J., dissenting). A statute's placement in a complex scheme does not render it ambiguous. The concurrence, meanwhile, does not identify any other reasonable interpretation that the words of § 848(b)(2)(A) can bear.

[7] The concurrence suggests that other circuits have interpreted § 848(b)(2)(A) differently. But that is incorrect. In *Atencio*, the parties both argued that § 848(b)(2)(A) allowed for aggregation, albeit to differing degrees. 435 F.3d at 1230. The Tenth Circuit recognized that both interpretations "may well have been error" and "may well be erroneous" because "[s]ubsection (c)(1) describes a single, specific violation." *Id.* We agree. In *United States v. Harris*, 959 F.2d 246 (D.C. Cir. 1992), the D.C. Circuit did not address the issue before us but simply summarized § 848(b) in passing and in general terms that do not adopt any particular interpretation of the statute. *Id.* at 252. The other authorities on which the concurrence relies merely describe jury instructions or the findings of a jury. *See id.* at 257 ("Palmer's life sentence was based on his leading a CCE involving 'at least 300 times the quantity of a substance described in subsection 841(b)(1)(B).'"); *United States v. Miller*, 890 F.3d 317, 356 (D.C. Cir. 2018) (stating that the jury found the CCE involved a certain amount of drugs); *United States v. Wilson*, 605 F.3d 985, 1036 (D.C. Cir. 2010) (same); *United States v. Edmond*, 52 F.3d 1080, 1106 (D.C. Cir. 1995) (same); *United States v. Avila Vargas*, 570 F.3d 1004, 1007-08 (8th Cir. 2009) (same). The fact that an appeals court described a district court's jury instructions or the jury's findings—without addressing the legal validity of those instructions

not only erred when it instructed the jury on the permissibility of aggregation; the error was plain.[8]

## D

That error, however, did not affect Montague's "substantial rights." *Puckett*, 556 U.S. at 135. "An error affects a defendant's substantial rights if it is prejudicial and it affected the outcome of the case." *United States v. Lombardozzi*, 491 F.3d 61, 74 (2d Cir. 2007)

---

or findings—does not establish a body of extra-circuit precedent on the question before us. The concurrence identifies no circuit decision holding that § 848(b)(2)(A) permits aggregation of drug quantities across more than one drug violation. And even if it could identify such a decision, that would not make a difference here. While "a division of authority on a given point may provide cause to question the plainness of an error," it does so only "in cases lacking the kind of clear statutory language at issue here." *In re Sealed Case*, 573 F.3d at 851-52. The Supreme Court has recognized that a statute is not rendered ambiguous "merely because there is a division of judicial authority over its proper construction." *Reno v. Koray*, 515 U.S. 50, 65 (1995) (internal quotation marks omitted).

[8] The concurrence claims that we have "stretched to reach this issue" and should instead have exercised "judicial restraint." *Post* at 12. But even the concurrence agrees that we must review the jury instructions for plain error, and deciding whether an error was plain is an important part of that analysis. In other words, it is not a stretch—when engaging in plain error review—to decide whether an error was plain. "There is a difference between judicial restraint and judicial abdication," *Citizens United v. FEC*, 558 U.S. 310, 375 (2010) (Roberts, C.J., concurring), and it would be abdication rather than restraint to ignore a question squarely presented in this appeal. *Cf. Oliveira v. New Prime, Inc.*, 857 F.3d 7, 16 n.13 (1st Cir. 2017) ("[W]e will not adopt an approach that assumes away one of the live issues on appeal simply because the issue is a difficult one."). As we have previously explained, we must "avoid restraint becoming lethargy and efficiency mere avoidance." *Browning-Ferris Indus. of S. Jersey, Inc. v. Muszynski*, 899 F.2d 151, 159 (2d Cir. 1990).

(alterations omitted) (quoting *United States v. Dukagjini*, 326 F.3d 45, 61 (2d Cir. 2003)). But if the effect of the error is "indeterminate or only speculative, we cannot conclude that [a defendant's] substantial rights have been affected." *United States v. Worjloh*, 546 F.3d 104, 110 (2d Cir. 2008) (quoting *Lombardozzi*, 491 F.3d at 74). The question is whether, had the jury been instructed properly, it would have found that the subsection (c)(1) offense involved 150 kilograms of cocaine. We conclude that the answer is yes.

The subsection (c)(1) offense here was narcotics conspiracy in violation of 21 U.S.C. § 846. When the district court instructed the jury, it described the "[f]irst" element of the CCE offense as follows: "[B]etween in or about 2008 and on or about July 1st, 2014 … the defendant, Colin Montague, committed the following felony violations of the federal narcotics laws *pertaining to a conspiracy to violate the drug laws of the United States in violation of Title 21, United States Code, Section 846*." App'x 5684-85 (emphasis added). The district court referred to a "series of three or more offenses" only when it moved on to the "[s]econd" element of the CCE offense. App'x 5685. The district court thus made it clear to the jury that the subsection (c)(1) felony violation was narcotics conspiracy in violation of § 846. Montague also conceded that the subsection (c)(1) violation was narcotics conspiracy in his motion for new trial.

Was there evidence of a narcotics conspiracy "involv[ing]" 150 kilograms of cocaine? 21 U.S.C. § 848(b)(2)(A). The government submitted extensive evidence of such a conspiracy, including thirty-four pages of a drug ledger seized at Montague's residence. The ledger covered the six-month span of September 2013 to February 2014. This evidence demonstrated that the predicate narcotics conspiracy involved more than 150 kilograms of cocaine.

27

For example, the thirty-four pages chronicle sales of over 120 kilograms to a single person—Shawn Bernard, also known as "Mark." Because the ledger pages cover about six months, that means Bernard purchased about twenty kilograms per month from Montague during this period. Bernard testified that he bought cocaine from Montague and resold it until his arrest in July 2014. Extending that twenty-kilogram-per-month figure until July 2014, when Bernard was arrested, yields a total volume of 200 kilograms from September 2013 to July 2014. That figure is well above the 150-kilogram threshold set by § 848(b)(2)(A).

In addition to the ledger, numerous witnesses testified that Montague facilitated the shipment of cocaine across the country using his brother's tractor trailer. Between 2008 and 2011, Montague's brother would transport cocaine from southern states, and a courier would accept the shipment in Delaware or Pennsylvania before driving the final leg to Rochester. Bernard testified that the truck typically smuggled fifty kilograms of cocaine at a time, but never less than forty-five kilograms, and that it would make a trip about every "month, [or] month and a half." App'x 1946. Construing these figures in Montague's favor would yield transportation of about 360 kilograms per year, more than enough to satisfy the requirements of § 848(b)(2)(A).

The jury was presented with even more evidence of Montague's conspiracy to distribute cocaine and conspiracy to possess with intent to distribute cocaine. Under these circumstances, Montague has not carried his burden of showing that any error in the jury instructions prejudiced the verdict. Because the error did not affect Montague's "substantial rights," *Puckett*, 556 U.S. at 135, it survives plain error review.

## III

Montague raises several other arguments on appeal. We conclude that each lacks merit.

First, Montague argues that the prosecutors committed gross misconduct by introducing allegedly false testimony from Officer Frank Lempka, Shawn Bernard, and Vidal Smith. But Montague has not shown that any of the testimony was false. For example, Bernard testified that Lou Perry Slaughter was a courier for Montague even though Slaughter purportedly acknowledged that he was a courier for Bernard. These statements are consistent and indicate neither that Bernard's testimony was false nor that the prosecution knew it was false. Similarly, Montague gives no reason to think that Lempka's or Smith's testimony was false or that the prosecution knew it was false.

Second, Montague claims that the prosecution improperly vouched for a witness, Antoine Shannon, by invoking his obligation under a cooperation agreement to tell the truth. But just prior to that invocation Montague had attacked Shannon's credibility on the ground that he had signed a cooperation agreement. When defense counsel attacks a "witness['s] credibility, the district court [may] rightly permit[] the government to introduce into evidence the various cooperation agreements and to elicit testimony about each cooperating witness's understanding of what his agreement required—specifically, to tell the truth." *United States v. Carr*, 424 F.3d 213, 228 (2d Cir. 2005).

Third, Montague contends that the government withheld three pieces of evidence from him in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The first item is the state grand jury's failure to indict Montague in 2013. Montague argues that he could have asserted

29

based on that evidence "the affirmative defense of collateral estoppel" against allegations that he was involved in a narcotics conspiracy prior to May 2013. Appellant's Br. 42. But collateral estoppel requires a final judgment, and a failure to indict is not a final judgment. *See Ashe v. Swenson*, 397 U.S. 436, 443 (1970) (explaining that collateral estoppel applies "when an issue of ultimate fact has once been determined by a valid and final judgment"); *United States v. Williams*, 504 U.S. 36, 51 (1992) ("[T]he grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge."). Had Montague known about the results of the state grand jury's proceedings, the outcome in this case would have been the same. He therefore cannot establish prejudice, an essential element of a *Brady* claim. *See United States v. Paulino*, 445 F.3d 211, 224 (2d Cir. 2006). With respect to the second item that Montague claims was improperly withheld—a record of a proffer session for Lou Perry Slaughter—Montague also fails to establish a *Brady* claim because he does not show that the record was "favorable" to him because it was "exculpatory … or … impeaching." *Id.* Montague also does not show that the third item—a letter by co-conspirator Lemuel Jones claiming that the government pressured him to testify—was "suppressed by the State." *Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014). Jones sent the letter to the district court, and it was recorded on the docket.

Fourth, Montague maintains that there was insufficient evidence to convict him of narcotics conspiracy, money-laundering conspiracy, or the substantive money-laundering charges. As stated above, the prosecution introduced more than enough evidence that Montague was involved in a narcotics conspiracy. On the other charges, five witnesses testified that Montague directly or indirectly

30

instructed them to send money under false pretenses. A government financial analyst determined that during the duration of the criminal enterprise, nearly $2.4 million in deposits to Montague-affiliated bank accounts came from uncertain sources. "[A]fter viewing the evidence in the light most favorable to the prosecution," as we must when evaluating an insufficiency-of-the-evidence claim, we conclude that a "rational trier of fact could have found the essential elements of the[se] crime[s] beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Fifth, Montague claims that he was entitled to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to challenge the validity of wiretap warrants. But Montague offers nothing more than conclusory assertions as to why the statements made to secure the warrants were "deliberate falsehood[s] or statement[s] made with reckless disregard for the truth," so this claim fails. *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008).

Sixth, Montague argues that the district court committed several evidentiary errors. But Montague does not explain how any of the district court's evidentiary decisions constituted an abuse of discretion. *See United States v. Persico*, 645 F.3d 85, 99 (2d Cir. 2011).

Seventh, Montague maintains that his conviction in federal court following the state grand jury's failure to indict him in 2013 violates the Double Jeopardy Clause of the Constitution. Montague's argument fails for two independent reasons. First, "[t]he Double Jeopardy Clause of the Fifth Amendment does not bar a grand jury from returning an indictment when a prior grand jury has refused to do so." *Williams*, 504 U.S. at 49. Consequently, a subsequent grand jury—state or federal—could indict Montague without raising an

31

issue of double jeopardy. Second, even if the state prosecution raised the issue of double jeopardy, Montague's double jeopardy claim still would be barred by the dual-sovereignty doctrine. *See Gamble v. United States*, 139 S. Ct. 1960, 1964 (2019) ("Under this 'dual-sovereignty' doctrine, a State may prosecute a defendant under state law even if the Federal Government has prosecuted him for the same conduct under a federal statute."). Montague concedes that New York and the federal government are separate sovereigns, but he argues that the state and federal prosecutions were so "intertwined" as to fall under the exception to the dual-sovereignty doctrine established by *Bartkus v. Illinois*, 359 U.S. 121 (1959). *United States v. Coonan*, 938 F.2d 1553, 1563 (2d Cir. 1991). However, Montague has asserted no facts that this is an "extraordinary circumstance[]," such as one in which "one sovereign has essentially manipulated another sovereign into prosecution." *United States v. All Assets of G.P.S. Auto. Corp.*, 66 F.3d 483, 494-95 (2d Cir. 1995). This case therefore does not fall under the *Bartkus* exception. Montague's prosecution did not offend the Double Jeopardy Clause.

Eighth, Montague asserts that because the initial venire included only two African Americans and one Hispanic, the venire violated the Sixth Amendment as well as 28 U.S.C. § 1861. But Montague alleges nothing to show that these figures were caused by the "systematic exclusion of [a] group in the jury-selection process," as would be required to show a violation of the Sixth Amendment. *Duren v. Missouri*, 439 U.S. 357, 364 (1979). Moreover, § 1861 does not require "precise proportional representation" on petit juries. *United States v. Jenkins*, 496 F.2d 57, 65 (2d Cir. 1974). Instead, a district court's process for summoning jurors must begin with voter registries and, "where necessary," "prescribe some other source or sources of names

32

in addition to voter lists … to foster the policy and protect the rights secured by section[] 1861." 28 U.S.C. § 1863(b)(2). The Western District of New York draws not only from voter registration lists, but from DMV records, records from the Department of Taxation, records from the Department of Labor, and records from the Department of Social Services. Montague fails to show that the venire was deficient under either the Sixth Amendment or § 1861.

Ninth, Montague claims ineffective assistance of counsel. We have routinely refrained from considering an ineffective assistance claim on direct appeal. *See United States v. Tarbell*, 728 F.3d 122, 128-29 (2d Cir. 2013); *United States v. Morris*, 350 F.3d 32, 39 (2d Cir. 2003). Because there has been no "opportunity [to] fully … develop the factual predicate" for the ineffective assistance of counsel claim, the appellate court on direct appeal is not "best suited to assess those facts." *Massaro v. United States*, 538 U.S. 500, 504 (2003). "[A] motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance" because it allows for a decision on a developed record. *Id.* Accordingly, we decline to consider this claim on direct appeal.

Tenth, Montague contends that this prosecution resulted from selective enforcement or malicious prosecution. But he identifies no facts indicating that similarly situated individuals have not been prosecuted or that the government otherwise has operated in bad faith. *See United States v. White*, 972 F.2d 16, 19-20 (2d Cir. 1992).

## CONCLUSION

For the reasons set forth above, we affirm the judgment of the district court.

JOSEPH F. BIANCO, *Circuit Judge*, concurring:

I concur with the majority opinion's determination that Montague's legal challenges to his convictions are without merit and that the conviction should be affirmed in its entirety. I write separately only to explain my disagreement with the plain error analysis in Part II(C) of the majority opinion regarding the district court's defective drug quantity jury instruction on the continuing criminal enterprise ("CCE") count.

With respect to the drug quantity requirement for a CCE charge, I agree with the majority opinion that the best reading of 21 U.S.C. § 848(b)(2)(A) requires that the Section 848(c)(1) offense involve 150 kilograms of cocaine in a single felony violation described in subsection (c)(1), and that, as such, the district court erred in instructing the jury that it could aggregate smaller drug quantities across three violations to satisfy the "continuing series of violations" requirement of the statute. *Id.* at § 848(c)(2). As to our review of that error, however, I respectfully disagree with the majority opinion's determination that this error was "plain," meaning that it was "clear or obvious, rather than subject to reasonable dispute." *Ante* at 22 (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)). Here, that determination does not lead to a reversal of the conviction because the majority

1

opinion ultimately (and correctly) concludes that the error did not affect Montague's substantial rights under the plain error test. *See United States v. Balde*, 943 F.3d 73, 96 (2d Cir. 2019) ("Under the plain error standard, an appellant must demonstrate that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." (internal quotation marks and citation omitted)).

Nevertheless, my concern is that the flawed reasoning that resulted in the majority opinion's finding that the error was plain could (1) provide an unwarranted windfall to other defendants, and (2) lead to incorrect findings of plain error in other cases involving statutory interpretation where (like here) there is a complete absence of binding precedent from the Supreme Court or this Court and other federal courts have interpreted the statutory language in the same manner as the district court.

The legal framework for determining whether an error is "plain" is well-settled in this circuit:

> For an error to be plain, it must, at a minimum, be clear under current law. We typically will not find such error where the operative legal question is unsettled, including where there is no binding precedent from the Supreme Court or this Court.

2

. . .

> It may be appropriate for this Court to find an error "plain," even in the absence of binding precedent from the Supreme Court or this Circuit, where other circuits have uniformly taken a position on an issue that has never been squarely presented to this Court. We emphasize, however, that such cases are bound to be exceedingly rare.

*United States v. Whab*, 355 F.3d 155, 158 (2d Cir. 2004) (internal quotation marks and citations omitted).

We have applied this standard in numerous other cases in determining that the legal error was not plain. *See, e.g.*, *United States v. Ragonese*, 47 F.4th 106, 113 (2d Cir. 2022) ("However, [the defendant] does not point to any binding authority . . . , nor are we aware of any. For that reason alone, we find no plain error."); *United States v. Napout*, 963 F.3d 163, 184 (2d Cir. 2020) ("Thus, because it is not clear under current law, that [the statute] is unconstitutionally vague . . . , the district court did not commit plain error in concluding that it is not." (internal quotation marks and citation omitted)); *United States v. Bastian*, 770 F.3d 212, 223 (2d Cir. 2014) ("Because the operative legal question is unsettled, we cannot conclude that [the defendant's] conviction . . . plainly violated [the Constitution]." (internal quotation marks and citation omitted)).

In this case, there was no binding precedent from the Supreme Court or this Court with respect to the interpretation of the drug quantity provision under Section 848(b)(2)(A). Nor was there any other circuit court that had held that the drug quantity requirement for a CCE count cannot be satisfied by aggregating the drug quantities for the predicate offenses. The only case authority the majority relies on in support of its position that the error was plain is the non-precedential summary order in *United States v. Goodwin*, No. 96-1199, 1997 WL 767408 (2d Cir. Dec. 12, 1997), where we held that "[t]he district court improperly instructed the jury that it could aggregate several predicate offenses to reach this quantity requirement," *id.* at *4. Although we addressed this quantity issue briefly in that summary order, we have nonetheless made clear that the "plain error" standard generally applies only when there is *binding* precedent that controls the outcome. *See, e.g.*, *Whab*, 355 F.3d at 158; *see also United States v. Ruzicka*, 988 F.3d 997, 1009 (8th Cir. 2021) ("Nonbinding authority alone is insufficient to make a legal proposition clear or obvious under current law.").

We should not depart from that well-settled general rule to find plain error here because the district court did not follow a holding that we articulated only in a non-binding summary order. The troubling nature of such an extension of the

4

plain error rule to a district court's failure to consider a prior summary order is illustrated in this particular case where the majority opinion suggests that the district court should have been aware of a non-binding summary order from over 20 years ago, even though it was not cited by either party in the district court or in the briefing on appeal, and contained no analysis of the statutory language or legal issue in its one-sentence holding. Indeed, no other court has ever cited that summary order in connection with the drug quantity holding. Notwithstanding the obscure and non-binding nature of that summary order, the majority opinion relies upon it to find that the district court's error was plain. I respectfully disagree and conclude, consistent with our prior precedent, that we should not hold the district court responsible for its lack of awareness of this non-binding summary order in assessing plain error on appeal.

I similarly disagree with the majority opinion's determination that the statutory language of Section 848(b)(2)(A) is so clear that the district court's ruling constitutes plain error. To be sure, even in the absence of binding precedent or authority from other courts, an error can be clear or obvious when it violates "the plain language of the statute . . . ." *United States v. Polouizzi*, 564 F.3d 142, 156 (2d Cir. 2009); *see also United States v. Brown*, 316 F.3d 1151, 1158 (10th Cir. 2003) ("[T]he

5

absence of circuit precedent does not prevent the clearly erroneous application of statutory law from being plain error." (alterations adopted) (internal quotation marks and citation omitted)). However, as set forth below, that is certainly not the case here given the complex statutory regime and the fact that reasonable jurists have interpreted the drug quantity provision consistent with the district court's instruction.

As a threshold matter, the requirement that the government needs to prove at least three predicate violations to constitute "a continuing series" of felony drug violations under the CCE statute is not even based on the statutory language itself, but rather was established in judicial decisions. *See, e.g.*, *United States v. Losada*, 674 F.2d 167, 174 n.4 (2d Cir. 1982) (noting that "[a]lthough the statute does not define 'continuing series of violations,' courts have required that there be a minimum of three" (collecting cases)). Thus, given the absence of any language regarding the requisite number of predicate violations in the statute and the overall complexity of this statutory structure, it is extremely difficult to discern how the district court's instruction allowing aggregation of the quantities from the various drug violations under the CCE statute could be so contrary to the statutory language to warrant a finding of plain error. *See, e.g.*, *United States v. Rosario*, 7

6

F.4th 65, 77 (2d Cir. 2021) (Rakoff, J., concurring) (finding, although the district court erred, no plain error because "[t]here is no question that the operative legal question in this case remained unsettled, since neither this Court nor the Supreme Court had yet construed the scope of the district court's inquiry for [the statutory] exception."); *United States v. Ramon*, 958 F.3d 919, 923 (10th Cir. 2020) (holding no plain error because "[b]efore we could conclude that the district court erred, we had to delve into the language and inner workings of [the statute]").[1]

In addition, the limited number of decisions in other circuits addressing this legal issue flatly contradict the majority opinion's conclusion that the statutory language is so clear that a district court could not reasonably interpret the statute differently. In particular, in the only published circuit decision to have directly considered this issue, the Tenth Circuit concluded that "*[t]hree* interpretations of [the relationship between the drug quantities in Section 848(b)(2)(A) and the underlying CCE violations] appear plausible," including the interpretation

---

[1] Although the majority opinion relies upon our decision in *Polouizzi* to support its position, the circumstances in that case are clearly distinguishable. In *Polouizzi*, we found that the error was plain in light of the "plain language of the statute [that was] entirely consistent with Supreme Court and Circuit precedent addressing similar statutes." 564 F.3d at 156. In contrast here, no such "similar statute" exists that could have helped guide the district court's interpretation of Section 848(b)(2)(A).

adopted by the district court here. *United States v. Atencio*, 435 F.3d 1222, 1229 (10th Cir. 2006) (emphasis added). Without deciding the issue, that court held that reversal was unwarranted because, "[e]ven if the district court's construction of the statute amounted to error that is plain, . . . the error did not affect [the defendant's] substantial rights. . . ." *Id.* at 1231. Furthermore, although not directly addressing this issue, the D.C. Circuit's decision in *United States v. Harris* seemed to agree with the government's aggregate interpretation of the statute (utilized by the district court here) by upholding a CCE conviction based upon the jury "attribut[ing] to [the defendant's] *enterprise* over 1500 grams of crack, more than 300 times the five-gram amount set out in section 841(b)(1)(B)(iii)." 959 F.2d 246, 257 (D.C. Cir. 1992) (per curiam) (emphasis added), *abrogated on other grounds by United States v. Stewart*, 246 F.3d 728 (D.C. Cir. 2001); *see also United States v. Miller*, 890 F.3d 317, 356 (D.C. Cir. 2018) (noting that "[t]he jury also found that the criminal enterprise was involved in the distribution of 30 kilograms or more of heroin and 15 kilograms or more of cocaine"); *United States v. Wilson*, 605 F.3d 985, 1036 (D.C. Cir. 2010) ("Pursuant to 21 U.S.C. § 848(b), the instructions regarding the continuing criminal enterprise charge . . . required the jury to find that the CCE involved distributing at least 30 kilograms of PCP, and the jury so found."); *United*

8

*States v. Edmond*, 52 F.3d 1080, 1106 (D.C. Cir. 1995) (noting that the jury was instructed that the government must prove "that the enterprise involved at least 1,500 grams . . . of cocaine base or crack or, in the alternative, at least . . . 150 kilograms of cocaine" (alterations in original) (citation omitted)); *see also United States v. Avila Vargas*, 570 F.3d 1004, 1007–08 (8th Cir. 2009) (noting that the special jury verdict determined that the criminal enterprise "involve[d] at least 15,000 grams of methamphetamine" and rejecting an insufficient evidence claim based on double-counting of drug quantity evidence at trial on the ground that "[t]he total drug quantity range [was] . . . 16,329.3 to 19,050.9 grams of methamphetamine").[2]

In addition, at least one other district court, citing *Harris*, adopted the same interpretation of Section 848(b)(2)(A) that the district court applied in this case. *See, e.g.*, *United States v. Singleton*, 177 F. Supp. 2d 31, 40–41 (D.D.C. 2001) ("[T]he plain meaning and intent of the statute are to the effect that the drug quantity is

---

[2] The majority opinion misconstrues the purpose of this string of citations to various circuit court decisions. *Ante* at 25 n.7. The purpose of these citations is not to suggest that each of these circuit court decisions reached the statutory question at issue here, but rather to demonstrate that the district judges in those cases (and seemingly the D.C. Circuit in *Harris*) interpreted the statute consistent with the district court in this case, further demonstrating that numerous reasonable jurists have not found the statutory language as unambiguous and plain as the majority suggests.

defined by the quantities aggregated throughout the life of the enterprise and not by any one single transaction or predicate act.").

Not only do these published decisions strongly support a conclusion that the district court's error was far from plain, but a brief survey of district court cases reveals that other courts have similarly allowed a jury to consider the aggregate drug quantity. *See, e.g., United States v. Williams*, No. 91-559-6, 2021 WL 5206206, at *5 (D.D.C. Nov. 9, 2021) ("At trial, the jury was instructed that the government had to prove beyond a reasonable doubt that 'the enterprise was involved in distribution' of 150 kilograms or more of cocaine 'and/or' 30 kilograms of PCP 'and/or' 1.5 kilograms or more of crack." (citation omitted));[3] Jury Verdict at 3, *United States v. Aguirre*, No. 15-cr-00143 (W.D.N.Y. Dec. 20, 2018), ECF No. 913 (verdict sheet asking jurors: "Did the continuing criminal enterprise involve at least 30 kilograms of heroin and 150 kilograms of cocaine?"); Special Verdict Form at 80, *United States v. Kwok Ching Yu*, No. 90-cr-47 (S.D.N.Y. Dec. 15, 1992), ECF No. 192 at 56 (verdict sheet asking jurors: whether defendant was "leader of the enterprise . . . and the violation involved at least 30 kilograms of heroin.").

---

[3] I note that each of the six above-referenced citations to the cases within the D.C. Circuit utilizing this "aggregate" instruction was given by a different district judge.

10

In short, the majority opinion appears to conclude that because it finds the statutory language clear, the issue should have been equally clear to every other court, even in the absence of binding precedent. The majority reaches that plain error conclusion even though court decisions over the past two decades demonstrate that the statutory language's degree of clarity was "subject to reasonable dispute," such that the district court's error was not plain. *Puckett v. United States*, 556 U.S. 129, 135 (2009).

Although the majority opinion's flawed "plain error" analysis fortunately will not impact this case (because the defendant's substantial rights were not affected given the overwhelming evidence that would have supported his conviction even under the correct jury instruction), there could be other cases in which a defendant was convicted of a CCE count (which are pending sentencing or appeal, or being challenged on collateral review) where this "plain error" holding could jeopardize the CCE conviction, or at the very least, result in unnecessary litigation. Moreover, if a similar mode of legal analysis is used by courts to determine plain error in other statutory contexts, there could be convictions under other statutes that could be improperly disturbed on appeal or in collateral litigation.

11

These consequences could have been avoided if, at a minimum, the majority opinion simply did not reach this issue in light of the lack of an impact on Montague's substantial rights, which is a separate requirement to find reversal based on plain error. *See Morse v. Frederick*, 551 U.S. 393, 431 (2007) (Breyer, J., concurring) ("And the 'cardinal principle of judicial restraint' is that 'if it is not necessary to decide more, it is necessary not to decide more.'" (quoting *PDK Labs., Inc. v. Drug Enf't Admin.*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in judgment)). In other words, as the Tenth Circuit did in *Atencio*, the majority opinion could have simply assumed *arguendo* that the error was plain and found no basis for reversal due to the failure to satisfy all four requisite prongs of the plain error framework. *See* 435 F.3d at 1230–31; *see also Jones v. United States*, 527 U.S. 373, 394 (1999) ("Even assuming, *arguendo*, that an error occurred (and that it was plain), petitioner cannot show it affected his substantial rights."); *United States v. Feliciano*, 223 F.3d 102, 125 (2d Cir. 2000) (assuming *arguendo* that the error was plain and finding that it did not "seriously affect[] the fairness, integrity or public reputation of the judicial proceedings" (alteration in original) (internal quotation marks and citation omitted)). Yet, instead of exercising judicial restraint, the majority opinion stretched to reach this issue and

may unnecessarily create uncertainty in CCE convictions already obtained in other cases, as well as an ambiguity in our plain error jurisprudence.[4]

For these reasons, I respectfully disagree only with that portion of the majority opinion's plain error analysis in Part II(C), but otherwise concur in the remainder of the majority opinion in its affirmance of the judgement of the district court.

---

[4] Although the majority opinion suggests that avoiding this issue would be judicial abdication, *ante* at 26 n.8, it is difficult to discern how an appellate court would somehow abdicate its judicial duties by deciding that the plain error test is not satisfied based on a narrow ground confined to the facts of this case, as opposed to a much broader ground under the same standard.

DENNIS JACOBS, Circuit Judge, dissenting:

I respectfully dissent. Colin Montague was convicted in 2018 of operating a "continuing criminal enterprise" ("CCE"), a federal crime requiring proof that the defendant committed a felony drug offense as "part of a continuing series" of drug offenses. See 21 U.S.C. § 848(c). The evidence showed that Montague trafficked a whole lot of narcotics over thousands of individual transactions. Notwithstanding this glut of source material, the indictment against him was barebones. It failed to describe any offense comprising the continuing series, instead alleging no more than that Montague "did violate [21 U.S.C. §§ 841(a)(1) and 846], which violations were part of a continuing series of violations of said statutes undertaken by the defendant." App'x at 32.

This is not just bad practice—it is unconstitutional. Each "predicate offense" making up the continuing series is itself an element of the broader CCE charge. Richardson v. United States, 526 U.S. 813, 817–20 (1999). Each predicate offense must therefore be set forth in the indictment. Since no such "setting forth" occurred here, the indictment was fatally deficient, and Montague's CCE

1

conviction must be vacated. My colleagues' ingenuity notwithstanding, I cannot join them in salvaging this indictment.[1]

I

The Fifth Amendment guarantees that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. That indictment "must set forth each element of the crime that it charges." Almendarez-Torres v. United States, 523 U.S. 224, 228 (1998); accord United States v. Dupree, 870 F.3d 62, 70 (2d Cir. 2017). This is no fussy rule of pleading or bureaucratic speed bump: a minimally specific indictment provides notice of the charges to the defendant and "gives the necessary assurance that the grand jurors knew and agreed to charge that which the text describes." United States v. Gonzalez, 686 F.3d 122, 132 (2d Cir. 2012).

---

[1] I dissent as to the sufficiency of the indictment's CCE count; I join the remainder of Judge Menashi's opinion, including its conclusion that the district court's instruction with respect to § 848(b)(2)(A)'s drug quantity element was plain error but did not affect Montague's substantial rights. See Maj. Op. at 15–24. As Judge Menashi explains, applying a rule in derogation of clear statutory text is plain error. Section 848(b)(2)(A) is sufficiently clear; thus disregarding it was plain error even though this Court had not yet interpreted the provision in a precedential opinion. A district court need not consult the Federal Reporter when the answer is already in the U.S. Code.

The grand jury is "a substantial safeguard against oppressive and arbitrary proceedings." Id. at 127 (quoting Smith v. United States, 360 U.S. 1, 9 (1959)). It serves as a "referee between the Government and the people" by making an independent assessment of the evidence. United States v. Thomas, 274 F.3d 655, 670 (2d Cir. 2001) (in banc) (quoting United States v. Williams, 504 U.S. 36, 47 (1992)). The requirement that each element be set out ensures that the "indictment reflects the judgment of a grand jury rather than only that of the prosecutor." Id. at 133. Otherwise, a court must "speculate as to whether a grand jury *might* have returned an indictment in conformity with the available evidence," which risks "the harm the Grand Jury Clause is intended to prevent— a federal prosecution begun by arms of the Government without the consent of fellow citizens."[2] Thomas, 274 F.3d at 670.

These principles apply cleanly to indictments charging a CCE. Each predicate offense comprising the requisite "continuing series" of drug offenses is a separate and essential element of the CCE offense. Richardson v. United States,

---

[2] The majority focuses only on notice, arguing that the rule I advocate would not have served Montague better in that department. Maj. Op. at 14–15. But that response ignores the *other* purpose of an indictment: to ensure that the grand jury found probable cause as to each element of the charged offense. See Gonzalez, 686 F.3d at 127 (distinguishing between these two purposes).

526 U.S. 813, 817–20 (1999). Thus, a CCE conviction effectively doubles as a conviction for each predicate offense; and by the same token, a CCE *indictment* doubles as an *indictment* of each predicate offense. The grand jury cannot find probable cause as to a CCE unless it finds probable cause that the defendant committed each predicate.

The result: a CCE indictment is subject to the same pleading rules as any other indictment—what must be included does not depend on whether the offense is a predicate for a CCE or a standalone basis for criminal liability. Enough information about each offense must be included to support an inference that the grand jury found probable cause that the defendant did it. The Third Circuit agrees: in <u>United States v. Bansal</u>, 663 F.3d 634, 647 (3d Cir. 2011), the court held that a CCE indictment "must include the facts and circumstances comprising at least three [violations]." The indictment need not designate the three predicates; but it must include (somewhere) the offenses (of whatever number) from which the petit jury can unanimously select those that support a conviction.[3]

---

[3] This requirement can be satisfied by separate counts charging qualifying drug offenses, or a list of allegations within the CCE count, or a description of sufficient facts in an introductory section. See <u>Bansal</u>, 663 F.3d at 647 ("[T]he CCE count itself need not identify with exacting specificity which three will ultimately prove the CCE charge. Incorporation by

With that in mind, consider the operative indictment in this case, which reads in relevant part:

> From in or about 2008 . . . through and including on or about July 1, 2014, in the Western District of New York, and elsewhere, the defendant . . . did knowingly, willfully, intentionally and unlawfully engage in a Continuing Criminal Enterprise in that he did violate Title 21, United States Code, Sections 841(a)(1) and 846, **which violations were part of a continuing series of violations of said statutes undertaken by the defendant . . . ."**

App'x at 32 (emphasis added). The only thing that charge says about the predicate offenses is that Montague "undert[ook]" "violations of" two statutes referenced by number. And the indictment charges Montague with only a single other drug offense: a conspiracy charge which overlaps with the CCE—and was ultimately dismissed as a lesser-included.

The indictment does not even allege discrete predicate violations: it merely gestures at some unknown number of prior crimes. The grand jury here likely did not even know what the predicate violations *were*, let alone find probable cause that Montague committed them. Grand jurors would not know one numbered offense from another. See Gonzalez, 686 F.3d at 132 ("We have no

reference is sufficient."). The Constitution is not concerned with formatting, but it does require that each element—here, at least three drug offenses—appear in the indictment and be approved by the grand jury.

5

reason to believe that members of a grand jury . . . think in terms of statutory subsections rather than in terms of facts.").  If instead of 21 U.S.C. §§ 841(a)(1) and 846, the indictment had cited 18 U.S.C. §§ 47(b) and 1082, the grand jury would have indicted Montague for polluting a watering hole and operating a gambling ship upon the high seas.

Joyner v. United States, 313 F.3d 40 (2d Cir. 2002), confirms what common sense tells us.  There, the indictment charged a CCE and a lesser-included conspiracy with only statutory citations to "describe" the predicate violations. That is a match for the Montague indictment, and Joyner deemed it "deficient under Richardson" because it included "nothing . . . identifying which three violations served as the predicate for the CCE charge."  313 F.3d at 47–48.  If the indictment in Joyner was "deficient," so is its analogue here.

## II

The majority opinion rests on a misreading of United States v. Flaharty, 295 F.3d 182 (2d Cir. 2002); it contradicts subsequent decisions of this and other circuits; and it leads to absurd results.

The defendant in Flaharty argued that the CCE count in that indictment "was deficient because it failed to specify the violations that constituted the

6

'series' necessary for a conviction."  295 F.3d at 197.  The issue was whether an indictment must identify *which* of the alleged violations comprise the continuing series—not (as here) whether the violations need to appear anywhere in the indictment at all.  Flaharty relied on Santana–Madera v. United States, 260 F.3d 133 (2d Cir. 2001), which (the Flaharty Court explained) had held that "an indictment that does not identify *which of many alleged felonies* constituted the series is not thereby defective."  Flaharty, 295 F.3d at 197 (emphasis added).

Flaharty applied the same principle: when "many alleged felonies" appear in the indictment, failing to specify which ones make up the continuing series is not fatal.  An indictment that describes the predicate offenses with statutory citations may therefore suffice *so long as* it also alleges (at least) two other qualifying drug offenses.[4]

---

[4] The majority disputes my reading of Flaharty because "three violations are needed to constitute a 'continuing series'" and the Flaharty indictment included only two predicate offenses.  Maj. Op. at 13.  But there was indeed a series of three offenses alleged in Flaharty.  A CCE consists of a felony drug offense committed as "part of a continuing series of violations"—in order to be "part of" the series, the felony offense must be one of the (three) violations making it up.  So, an indictment that alleges a felony drug violation in the CCE count and then two other violations—whether in the same or other counts—has adequately alleged a "series" of three.  That was the case in Flaharty, but it is not the case here.

7

The Third Circuit understood <u>Flaharty</u> precisely this way in <u>United States v. Bansal</u>, 663 F.3d 634 (3d Cir. 2011). Confronting the same question, the Third Circuit turned to <u>Flaharty</u> and read it to hold that, "although an indictment *must contain three [violations]* that could support a CCE conviction, it need not specify which of those [violations] will ultimately be used to maintain the CCE conviction." 663 F.3d at 647 (emphasis added). Then, "using the <u>Flaharty</u> court's reasoning to guide [its] analysis," the Third Circuit adopted the principle that "an indictment must include the facts and circumstances comprising at least three [violations]," <u>id.</u>—the very rule the majority rejects.

Our subsequent decision in <u>Joyner</u> confirms the Third Circuit's understanding of <u>Flaharty</u>—and mine. If, as the majority concludes, <u>Flaharty</u> tolerates CCE indictments that give no more than the statutes violated by the (otherwise unspecified) predicate offenses, then <u>Joyner</u>—which deemed just such an indictment "deficient"—directly contradicts <u>Flaharty</u>. I cannot think that Judge F.I. Parker, who was on both panels, signed two incompatible opinions within six months.

According to the majority opinion, <u>Joyner</u> disapproved only indictments that omit *all* discussion of the predicate offenses. But, to repeat, the indictment in

8

Joyner *did* discuss predicate offenses—and did so in the same way as the Flaharty and Montague indictments. So, either the Joyner Court failed to read the indictment it was passing on, or Joyner meant what it said (and Flaharty is critically narrower than the majority thinks).

By holding that a CCE indictment may allege a factual element by citing a statute, the majority opinion contradicts another of our cases. In United States v. Gonzalez, 686 F.3d 122 (2d Cir. 2012), we dealt with a prosecution for distributing at least 500 grams of cocaine. The government acknowledged that quantity was an element of the offense, but prosecutors omitted the amount from the text of the count—instead, the government claimed it had adequately alleged the quantity element by citing the statute that criminalized distribution of 500 grams or more. See 686 F.3d at 124–26. That is, like the majority here, the government assumed that an indictment may plead a factual element by citing a statute.

We rejected that argument in an opinion by Judge Kearse, who was (not incidentally) the author of Flaharty: "Stating that an act is in violation of a cited statutory section adds no factual information as to the act itself and instead only declares the legal basis for claiming that the act is deserving of punishment . . . ."

<u>Gonzalez</u>, 686 F.3d at 129 (emphasis, internal quotation marks, and citation omitted).  Accordingly, "a deficiency in an indictment's factual allegations of the elements of an offense is not cured by the fact that the relevant count cited the statute that the defendant is alleged to have violated."  <u>Id.</u> at 128 (cleaned up; internal quotation marks and citation omitted).  For many of the reasons discussed above, <u>Gonzalez</u> held that substituting a citation for factual allegations defeated the grand jury's role in our criminal system.  <u>See</u> <u>id.</u> at 132–33.  So too here.[5]

Absurd results also follow from the majority's rule.  The deficiency of this indictment compelled the trial court to instruct the jury that the predicate violations "may even be acts not mentioned in the indictment at all."  App'x at 5681.  If predicate violations are effectively omitted from the indictment, juries will *have* to rely on extra-indictment acts.  The majority's logic thus leads to

---

[5] The nature of the CCE offense further heightens the conflict between the majority's opinion and <u>Gonzalez</u>.  Because the commission of a prior crime is itself an element of the CCE, each element of the *predicate* offense is also an element of the CCE: the grand jury can't find probable cause for the CCE if it doesn't find probable cause for each predicate violation, and it can't find probable cause for each predicate if it doesn't find probable cause for every element.  So, whereas the statutory citation in <u>Gonzalez</u> stood in for only one element, the indictment here substitutes a statutory citation for *every* element of the predicate offenses.

convictions premised on accusations entirely absent from the indictment. One error spawns another.

Finally, the majority openly splits with the Third Circuit regarding how a CCE indictment must set forth each predicate violation. See Maj. Op. at 11, 14 (citing <u>Bansal</u> for the approach it rejects). This may surprise the Third Circuit, which thought it was applying the Second Circuit's rule (from <u>Flaharty</u>). The majority opinion is also in serious tension with cases from the First, Seventh, Eighth, and Tenth Circuits.[6] Those courts have all considered whether a CCE indictment that fails to specify predicate violations in the CCE count (like the indictment here) provides the defendant constitutionally adequate notice. Each circuit strongly disapproved of such perfunctory pleading, and the indictments in those cases withstood dismissal only because they alleged qualifying predicate offenses in other counts, as shown by the quotes in the margin.[7] That is, four

---

[6] United States v. Soto-Beniquez, 356 F.3d 1 (1st Cir. 2003); United States v. Staggs, 881 F.2d 1527 (10th Cir. 1989) (en banc); United States v. Moya-Gomez, 860 F.2d 706 (7th Cir. 1988); United States v. Becton, 751 F.2d 250 (8th Cir. 1984).

[7] See Soto-Beniquez, 356 F.3d at 26 ("[A]t least where the CCE count incorporates by reference predicate offenses charged elsewhere in the indictment, failure to list predicate offenses in the CCE count itself is not reversible error."); Staggs, 881 F.2d at 1531 (declining to approve a CCE indictment that *only* "track[ed] the language of the statute" and instead holding that "a CCE indictment is sufficient where . . . the indictment additionally alleges at least three violations in another count or counts"); Moya-Gomez, 860 F.2d at 752 ("[The defendant] attacks count 21 of the indictment . . . because it did not specifically enumerate or incorporate by reference the predicate offenses . . . . We do not approve of the government's method of

circuits (in addition to the Third) have strongly implied that an indictment like this one, which *neither* specifies the predicates in the CCE count *nor* alleges qualifying offenses elsewhere, is constitutionally deficient.

*    *    *

The CCE count of this indictment failed to set forth each essential element of the charged offense.  The Constitution mandates that a CCE indictment do more to plead predicate offenses than assert that the defendant undertook an unknown number of violations of a given statute over a span of years.  And our decision in <u>Flaharty</u> does not counsel a contrary result.

---

charging in this case.  However, here we do not think it amounts to reversible error. . . . The[] [six other narcotics] counts gave him actual notice of the predicate acts on which the government would rely . . . .”); <u>Becton</u>, 751 F.2d at 256 (“In this case, other counts of the indictment gave Becton notice of the underlying felonies. . . . We think it would be far preferable to list the felonies comprising the criminal enterprise in the CCE count of an indictment . . . . However, we conclude on the facts in this case, that Becton received adequate notice of the charges against him.”)