*United States v. Ortiz*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

---

AUGUST TERM 2023
No. 22-1775

**UNITED STATES OF AMERICA,**
*Appellee*,

v.

**ANTONIO ORTIZ, AKA SEALED DEFENDANT 1, AKA PITO,**
*Defendant-Appellant*.

---

On Appeal from the United States District Court
for the Southern District of New York

---

SUBMITTED: SEPTEMBER 20, 2023
DECIDED: APRIL 30, 2024

---

Before:      CALABRESI, MENASHI, and PÉREZ, *Circuit Judges*.

Defendant-Appellant Antonio Ortiz was accused of repeatedly raping his teenage daughter while completing a term of supervised release for a drug-trafficking conviction. Following a two-day evidentiary hearing, the district court found that Ortiz had committed three release violations, each pertaining to the rapes. The district court revoked Ortiz's term of supervised release, sentenced him to the

statutory maximum of sixty months of imprisonment, and ordered that this sentence be served consecutively to any state court sentence he might receive. On appeal, Ortiz argues that he received ineffective assistance of counsel at the evidentiary hearing and that the sentence the district court imposed was procedurally and substantively unreasonable. We disagree and affirm the judgment of the district court.

––––––––––

Matthew R. Shahabian, Madison Reddick Smyser, and Stephen J. Ritchin, Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY, *for Appellee*.

Randall D. Unger, Kew Gardens, NY, *for Defendant-Appellant*.

––––––––––

MENASHI, *Circuit Judge*:

Defendant-Appellant Antonio Ortiz appeals from a judgment of the district court revoking his term of supervised release and sentencing him to sixty months of imprisonment. Following a two-day evidentiary hearing, the district found that Ortiz had violated the conditions of his supervised release by repeatedly raping his teenage daughter over a period of approximately eleven months. The rapes began two months after Ortiz's release from prison, when the victim was sixteen.

Ortiz asks us to vacate the district court's judgment of revocation and imposition of the statutory maximum sentence for two reasons. First, Ortiz argues that he received constitutionally

ineffective assistance from his counsel at the evidentiary hearing. Ortiz testified at the hearing that he would have been physically incapable of raping his daughter because of injuries he sustained in three prior motorcycle accidents. On appeal, he contends that his counsel failed to present medical evidence that would have corroborated that testimony. Second, Ortiz argues that the sixty-month sentence is procedurally and substantively unreasonable because the district court failed to explain its rationale for the sentence and ignored the parsimony clause of 18 U.S.C. § 3553(a).

We are not persuaded. To prevail on a claim of ineffective assistance of counsel, Ortiz "must demonstrate both 'that counsel's performance was deficient' and 'that the deficient performance prejudiced the defense.'" *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Ortiz has not shown—even assuming that his counsel's performance was deficient—that the purportedly deficient performance prejudiced his defense. We also conclude that the rationale for the sentence is evident from the record and that—especially because this case concerns a violation of supervised release rather than a plenary sentencing—the district court did not abuse its discretion by imposing it. We affirm the judgment of the district court.

## BACKGROUND

Ortiz participated in a drug-trafficking organization that sold and distributed narcotics to locations in New York, Massachusetts, and Pennsylvania. He was arrested on March 20, 2013, and charged with two counts of conspiracy to distribute heroin, cocaine, and oxycodone, among other narcotics, in violation of 21 U.S.C. § 841 and § 846. On December 15, 2015, the district court sentenced Ortiz to

seventy-two months of imprisonment, to be followed by five years of supervised release.

After serving most of his sentence, the Bureau of Prisons released Ortiz to home detention on March 21, 2018. He completed his prison sentence in home detention and began serving his term of supervised release on June 11, 2018.

On February 3, 2022, the Probation Office submitted a violation report to the district court. The report alleged six violations of the terms of Ortiz's supervised release. Three of those violations—the "Rape Specifications"—concerned allegations that Ortiz repeatedly raped his daughter from May 18, 2018, when she was sixteen years old, to April 12, 2019, when she was seventeen.[1] Ortiz was forty-three and forty-four years old at the time.

The evidentiary hearing on the Rape Specifications began on June 28, 2022. The government presented a detailed and extensive case, including testimony from the daughter, testimony from corroborating witnesses, and documentary evidence. The government established that, over an eleven-month period beginning shortly after moving in with his daughter, his wife, and his wife's mother in May 2018, Ortiz raped his daughter on a regular basis. *See*

---

[1] Specifications Two, Three, and Four related to the rapes. Specification Two alleged that Ortiz committed incest in the third degree in violation of New York State Penal Code § 255.25. Specification Three alleged that Ortiz committed rape in the third degree in violation of New York State Penal Code § 130.25(2). And Specification Four alleged that Ortiz committed the crime of endangering the welfare of a child in violation of New York State Penal Code § 260.10(1). The other three alleged violations—relating to unauthorized out-of-state travel, failure to notify the Probation Office about a change of residence, and use of marijuana—were ultimately severed from the hearing on the other specifications and are not at issue in this appeal.

App'x 213-71. A friend of the daughter, her college boyfriend, and the director of a program at her college each testified and corroborated the daughter's testimony. The government also introduced documentary exhibits, including records from the Federal Bureau of Prisons, records from a hotel where the last rape occurred, and notes from the Probation Office. In addition, the district court took judicial notice of the presentence report from Ortiz's earlier case.

Ortiz's trial counsel called defense witnesses and submitted photographs and videos as defense exhibits. Ortiz testified about three motorcycle accidents he had suffered in the past and the injuries that had resulted. The defense introduced photographs of these injuries and questioned Ortiz about how the injuries limited his ability to move. Ortiz maintained that the injuries rendered him physically incapable of raping his daughter. But on cross examination, he conceded that even after the accidents, he continued to drive a motorcycle, play handball, detail cars, walk without a cane, and dance. Ortiz also admitted that he continued to have sex after the accidents. In particular, Ortiz admitted that he had sex with his wife on the same air mattress where a number of the rapes occurred, during the time period in which the rapes occurred, while his daughter was asleep next to them.

After the evidentiary hearing, the district court found that Ortiz had committed the three Rape Specifications. The district court said that it found the victim "in the main and in all the material respects to be credible based on my assessment of her demeanor, the manner in which she answered, and corroborating evidence." *Id.* at 397. The district court also found the corroborating witnesses to be "highly credible in all material respects." *Id.*

The district court rejected the defense's argument that Ortiz was physically incapable of raping his daughter due to injuries from the motorcycle accidents. There was no objective medical evidence that the injuries made it impossible for him to have sexual intercourse, the district court noted, and "[t]he very fact that he had intercourse with his wife, which he admits out of his own mouth, is virtually entirely inconsistent with his impossibility theory." *Id.* at 400. The district court observed that while Ortiz may have had pain from his injuries, pain "is a relative thing" that "people tolerate … all the time for various reasons," and "[h]aving sex may well be one of the reasons one would tolerate a certain level of pain." *Id.*

After finding that Ortiz had committed the Rape Specifications, the district court proceeded to sentencing. To determine the appropriate sentence, the district court heard again from Ortiz, his daughter, and his wife. The government asked for the statutory maximum sentence of sixty months for violating the terms of supervised release, *see* 18 U.S.C. § 3583(b)(1), based on "the nature of the offense" and Ortiz's "egregious breach of the Court's trust while on supervised release," App'x 418-19. In finding that Ortiz had committed the Rape Specifications, the district court itself had emphasized the "horror of what was done to her," Ortiz's extensive criminal history, the "likelihood that Ortiz just does what he wants to do," and Ortiz's lack of credibility. *Id.* at 404-05.

The district court revoked Ortiz's term of supervised release, sentenced him to the sixty-month maximum—a sentence of three months above Ortiz's guidelines range of forty-six to fifty-seven months—and ordered that the sentence be served consecutively to an anticipated state court sentence. The term of imprisonment would be followed by five years of supervised release, with the same conditions that applied during the term that was revoked—and the additional

condition that Ortiz have no contact with his daughter or her mother. Ortiz timely appealed.

## DISCUSSION

Ortiz argues that he was denied effective assistance of counsel during the evidentiary hearing because his counsel purportedly made "no effort to secure medical evidence that would have corroborated" Ortiz's testimony that he was physically incapable of raping his daughter due to his motorcycle injuries. Appellant's Br. 18. He further argues that the sentence imposed was procedurally and substantively unreasonable because the district court did not adequately explain its rationale for the sentence. We address each argument in turn.

## I

We have often "refrained from considering an ineffective assistance claim on direct appeal" when "there has been no opportunity to fully develop the factual predicate for the ineffective assistance of counsel claim." *United States v. Montague*, 67 F.4th 520, 540 (2d Cir. 2023) (internal quotation marks and alterations omitted). Under such circumstances, a "'motion brought under [28 U.S.C.] § 2255 is preferable to direct appeal for deciding claims of ineffective assistance' because it allows for a decision on a developed record." *Id.* (quoting *Massaro v. United States*, 538 U.S. 500, 504 (2003)). However, "we may decide these claims on direct appeal when the factual record is fully developed and resolution of the Sixth Amendment claim on direct appeal is beyond any doubt or in the interest of justice." *United States v. Bodnar*, 37 F.4th 833, 845 (2d Cir. 2022) (internal quotation marks omitted). In this case, the record is developed and the resolution of the claim is beyond doubt.

A defendant claiming ineffective assistance of counsel must make two showings. First, "the defendant must show that counsel's

7

representation fell below an objective standard of reasonableness" under "prevailing professional norms" such that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687-88. Second, the defendant must "affirmatively prove prejudice" from the deficient performance such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693-94. In considering these requirements, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

Although the inquiry includes both "the performance component" and "the prejudice component," it is not necessary for "a court deciding an ineffective assistance claim" to "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. As relevant here, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* The Supreme Court has instructed that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

In this case, Ortiz cannot establish prejudice. He contends that his trial counsel "fail[ed] to present medical evidence to show that he was physically incapable of raping or sexually abusing his daughter" and "made no effort to secure medical evidence that would have corroborated Ortiz's testimony." Appellant's Br. 2, 18. In particular, Ortiz argues that his trial counsel should have "ascertained the names of the medical providers who treated Ortiz and called them to testify

8

to the physical limitations which resulted from his injuries." *Id.* at 21. Ortiz does not identify any medical providers who should have been approached, what those providers would have said, or how the testimony would have supported Ortiz's impossibility theory.

But even if medical evidence or testimony were presented to corroborate Ortiz's testimony, the outcome of the hearing would have been the same. Such corroboration would not have overcome Ortiz's own admission that after all three of his motorcycle accidents, he continued to ride motorcycles, play handball, walk without a cane, dance, detail cars, and have sex. Most importantly, Ortiz testified that he had sex with his wife on the same air mattress where the alleged rapes occurred, during the same time period in which the rapes occurred, while his daughter was asleep on the mattress next to them. He thereby conceded that he was able and willing to engage in sexual activity at the same time and under the same conditions as the alleged rapes. Even if medical evidence had corroborated his testimony that he had suffered injuries, it could not have established that it was impossible for Ortiz to have engaged in the alleged conduct.

Ortiz's own testimony convinced the district court that his impossibility defense was baseless. The district court explained that "[t]he very fact that he had intercourse with his wife, which he admits out of his own mouth, is virtually entirely inconsistent with his impossibility theory." App'x 400. Even if Ortiz had injuries that caused some level of pain, the district court concluded, "[h]aving sex may well be one of the reasons one would tolerate a certain level of pain." *Id*.

Because of Ortiz's admission at the hearing, there is no "reasonable probability" that medical evidence or testimony would have changed the district court's decision such that the lack of such

9

evidence or testimony is "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.[2]

## II

Ortiz next insists that, even putting aside his counsel's performance, the sentence the district court imposed was "procedurally and substantively unreasonable." Appellant's Br. 27. We disagree.

"Sentences for violations of supervised release are reviewed under 'the same standard as for sentencing generally: whether the sentence imposed is reasonable.'" *United States v. Brooks*, 889 F.3d 95, 100 (2d Cir. 2018) (quoting *United States v. McNeil*, 415 F.3d 273, 277 (2d Cir. 2005)); *see also United States v. Degroate*, 940 F.3d 167, 174 (2d Cir. 2019). This reasonableness review "encompasses two components: procedural review and substantive review," which we conduct "under a 'deferential abuse-of-discretion standard.'" *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)).

## A

Congress has specified that a sentencing court, "at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence," including "the specific reason for the imposition of a sentence different from that described" in the guidelines. 18 U.S.C. § 3553(c)(2). When the district court imposes a

---

[2] Ortiz relies on *Foster v. Lockhart*, 9 F.3d 722 (8th Cir. 1993), in which the Eighth Circuit concluded that a defendant had been prejudiced by his counsel's failure to pursue an impotency defense. But Ortiz himself acknowledged that the motorcycle accidents did not leave him sexually dysfunctional, so no corroborating evidence would have established that he was.

sentence for the violation of the terms of supervised release—as it did in this case—"the degree of specificity required for the reasons behind [the] sentence is less than that for plenary sentencing." *United States v. Smith*, 949 F.3d 60, 66 (2d Cir. 2020).

A sentence is procedurally unreasonable if the district court "fails adequately to explain the chosen sentence" as § 3553(c) requires. *United States v. Robinson*, 702 F.3d 22, 38 (2d Cir. 2012). But "the 'statement' requirement of § 3553(c) sets a low threshold." *United States v. Rosa*, 957 F.3d 113, 119 (2d Cir. 2020). The district court "need not engage in a prolonged discussion of its reasoning, especially if the matter is conceptually simple." *United States v. Robinson*, 799 F.3d 196, 202 (2d Cir. 2015). "The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances." *Rita v. United States*, 551 U.S. 338, 356 (2007). We have said that "[d]etermining what is required in any particular case is a matter firmly committed to the district court's discretion." *United States v. Davis*, 82 F.4th 190, 196 (2d Cir. 2023).

While the district court "must adequately explain the chosen sentence to allow for meaningful appellate review," *Gall*, 552 U.S. at 50, that standard is met when "the record as a whole satisfies us that the judge 'considered the parties' arguments and had a reasoned basis for exercising his own legal decisionmaking authority,'" *Chavez-Meza v. United States*, 585 U.S. 109, 119 (2018) (alteration omitted) (quoting *Rita*, 551 U.S. at 356). Because Ortiz failed to raise a procedural objection at the time of sentencing, we review his claim of procedural unreasonableness for plain error. *See United States v. Verkhoglyad*, 516 F.3d 122, 128 (2d Cir. 2008).[3]

---

[3] There are "four prongs of plain error analysis: (1) there must be an error; (2) the error must be plain, meaning it must be clear or obvious, rather than

11

In this case—especially in light of the lesser specificity required for a sentence for the violation of supervised release—the record as a whole establishes that the district court considered the parties' arguments and had a reasoned basis for imposing the particular sentence. While deliberating on the sentence, the district court heard from and questioned Ortiz, the victim, and the victim's mother. The government asked for the maximum sentence based on "the nature of the offense" and Ortiz's "egregious breach of the Court's trust while on supervised release." App'x 418-19. The district court emphasized the "horror of what was done to her," Ortiz's criminal history, the "likelihood that Ortiz just does what he wants to do," and Ortiz's lack of credibility because there is "no reason to suppose that Ortiz is a truth teller." *Id.* at 404-05.

We think the record makes clear why the district court imposed the sentence it did. The district court found that Ortiz repeatedly raped his teenage daughter while completing a term of supervised release for an underlying drug-trafficking conviction. In choosing the sentence, the district court relied on the seriousness of the offense, Ortiz's inability to refrain from criminal activity, and his breach of the district court's trust.

It is often "sufficient for purposes of appellate review that the judge simply relied upon the record, while making clear that he or she has considered the parties' arguments and taken account of the § 3553(a) factors." *Chavez-Meza*, 585 U.S. at 116. "[M]ore explanation

---

subject to reasonable dispute; (3) the error must have affected the appellant's substantial rights in that it affected the outcome of the proceedings; and (4) if these other three prongs are satisfied, the court of appeals has the discretion to remedy the error if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Montague*, 67 F.4th at 528 (internal quotation marks and alteration omitted).

may be necessary" based on "the legal arguments raised at sentencing," *id.*, but Ortiz did not raise legal arguments against the government's proposed sentence. Instead, Ortiz's counsel said that Ortiz "does love his daughter. … He is a family man. He has tried to work. There's no question he has injuries. There is no question, based on his prior [history], that he has some depression issues and some mental health issues." App'x 408. His counsel urged the district court to "consider that he has throughout reported to probation when he was supposed to and that he has made efforts to behave, other than I understand this offense," and that Ortiz "will face a more substantial sentence in Nassau County." *Id.* at 409. Ortiz himself simply stated that "[t]he only thing I would like to say is I did not do this and that I love my daughter." *Id.* at 410. Given the record before the district court and the "circumstances" of Ortiz's violation of the terms of his supervised release, *Rita*, 551 U.S. at 356, we do not believe that these assertions necessitated more explanation than the district court provided.

We see no plain error that warrants resentencing. "[A]ppellate courts retain broad discretion in determining whether a remand for resentencing is necessary." *Molina-Martinez v. United States*, 578 U.S. 189, 204 (2016). A remand in this case would require the district court to augment the reasons for the sentence already apparent in the record. But "[s]entencing is a responsibility heavy enough without our adding formulaic or ritualized burdens." *Cavera*, 550 F.3d at 193. "[W]e do not require district courts to engage in the utterance of 'robotic incantations' when imposing sentences," *Smith*, 949 F.3d at 66 (quoting *United States v. Sindima*, 488 F.3d 81, 85 (2d Cir. 2007)), and we decline to do so here.

13

**B**

Ortiz further contends that the sentence was substantively unreasonable because the district court "effectively ignored the parsimony clause contained in 18 U.S.C. § 3553(a)" when it failed to "provide an explanation for the chosen sentence." Appellant's Br. 31. The parsimony clause provides that the sentencing court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a); *see United States v. Ministro-Tapia*, 470 F.3d 137, 142 (2d Cir. 2006) ("[I]f a district court were explicitly to conclude that two sentences equally served the statutory purpose of § 3553, it could not, consistent with the parsimony clause, impose the higher.").

We will vacate a sentence as substantively unreasonable "only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions, that is, when sentences are so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing them to stand would damage the administration of justice." *United States v. Aldeen*, 792 F.3d 247, 255 (2d Cir. 2015) (internal quotation marks and citations omitted). "[O]ur review of a sentence for substantive reasonableness is particularly deferential," *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012), because we must "take into account the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion, and bearing in mind the institutional advantages of district courts," *Cavera*, 550 F.3d at 190.

We see no reason to reverse the district court's sentence here. The district court found that Ortiz began raping his teenage daughter two months after he was released from prison. He raped her while her mother slept beside them, under circumstances involving

14

coercion and threats designed to conceal his abuse. As explained above, we do not agree that the district court failed to provide an explanation for the sentence. In any event, the five-year sentence— only three months above the guidelines range—does not "constitute a 'manifest injustice' or 'shock the conscience'" because it is not "shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *United States v. Rigas*, 583 F.3d 108, 123-24 (2d Cir. 2009).

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.